The next case is Lyons v. Johns Hopkins Hospital. Mr. Sassman, when you're ready. May it please the Court. Your Honors, I'm going to begin this morning by discussing the District Court's application of the current drug user exception in this case, which was the sole basis for its grant of summary judgment to Johns Hopkins on Mr. Lyons' discrimination. Applying that exception was error here. First, Johns Hopkins could not have acted on the basis of Mr. Lyons' drug use in failing to accommodate or engage in the interactive process with his requests for accommodations prior to. Was Mr. Lyons ever, in this case, do you acknowledge he was at that point a current drug user? Yes or no? No, I'm asking you, does the record reflect that they, is it disputed that at some point, are you disputing that at some point Mr. Lyons was in fact using illegal drugs? No, Your Honor. I do not dispute that. So he was then, I'm not trying to lock it into the term current drug user, but he was currently using drugs at a point relevant in this case. Is that correct? That's correct, Your Honor. And I do want to be precise. There's several elements of the statutory exception here. Was that on December the 19th when he failed the drug test? You concede he was a drug user at that point? Yes, Your Honor. But it's, however, in order for the exception to apply, Hopkins had to have acted on the basis of his drug use in engaging in the discriminatory action here. Let me ask you this. I'll let you make that argument if we get back to it. Was it clear that Johns Hopkins could continue to believe he was a drug user when he refused to take a drug test on February the 19th? He was a drug user on December the 19th. You agree. I don't think there's any reason not to agree. That's the record, isn't it? He failed a drug test that day. That's correct. And so Johns Hopkins looked at him as a drug user. Then on the 19th, two months later, February the 19th, Johns Hopkins knew that he refused to take a drug test, correct? That's disputed in the record, Your Honor. What's disputed? Mr. Lyons said he never refused to take any drug test, either at the resource group or at Johns Hopkins. In fact, Was Johns Hopkins, were they informed that he refused to take a drug test? There is, in Glipsman's notes, it suggests that the advisor at the resource group told him that. However, when confronted with that fact in his deposition, Mr. Lyons expressly disagreed and countered that, saying he never refused any drug test. No, no, no. That's not the point. That's not the point I'm asking you. I'm asking you, was Johns Hopkins informed, whether it was true or not, but were they informed that your client had refused to take a drug test on February the 19th? Mr. Glipsman's notes suggest that. However, again, I emphasize that it's a disputed fact in this case. No, it's not. It's not as, no. Did Mr. Lyons ever say that on that date he told, on that date did he tell Johns Hopkins, I didn't refuse to take a drug test, did he tell them? On 2-19. No, but But we're going, I want to focus on what Johns Hopkins knew and what, then I want to focus on what they knew and how we charge them with conduct based on what they knew. And it appears to me to be fairly clear that on the 12-19, Mr. Lyons was a current drug user. And it appears to me from the undisputed facts that on 2-19, February 19th, that Johns Hopkins had reason to believe he was, had not stopped using drugs. Isn't that correct? I disagree, Your Honor. I believe that what we're looking for here is whether he was a qualified individual at the time. That's not what I'm looking for. What I'm looking for is the answer to my question. Isn't it, weren't they, he was a drug user. Everybody knew that on 12-19. Right? You'd say that's right. It's undisputed. I'm not trying to mislead you on the facts. That's the record. Then on 2-19, it was my understanding, and I think you acknowledged that based on the notes, Mr. Thurman's notes, that Johns Hopkins was informed that Mr. Lyons refused to take a drug test. Why doesn't that then let them reasonably believe that on the 19th of February, he was still a current drug user? Well, I guess the question is why that necessarily matters on February 19th, because the conduct occurred here over different periods of time, including he requested accommodations prior to the drug test, at which point there would be no basis for Johns Hopkins to believe he was a current drug user. Did you note that in your claim to the EEOC? It's not specifically. You didn't specifically say that, did you? The claim to the EEOC is a claim for discrimination based on a failure to accommodate him, and that is clearly in the EEOC charge itself. However, as well as- Failure to accommodate on conduct before the drug test? It doesn't specifically say that, Your Honor. However, it does make- So let me ask this question. Did you specifically complain to EEOC about a failure to accommodate before the drug test on 12-19? No. What the charge, but we did not have to, Your Honor. What the charge needed to say- Let me go through. I'm going to let you make your argument and you'll have time. But after 2-19, what is there in the record that would put Johns Hopkins on notice that Mr. Lyons was no longer a current drug user? There's substantial- For example, he submitted his short-term disability notice. And as you look through the records of the communications between Mr. Lyons and Hopkins, there's no communication- Point to something specific. Is it the note from Dr. Kwan? Is that- What's the strongest evidence you have from which Johns Hopkins could reasonably take that Mr. Lyons was no longer a drug user? Well, I believe- After February the 19th, what is there? In the interactions between Mr. Lyons and Hopkins, there was never a request for a drug test or any proof of that. I didn't ask you that, but I said this- Follow my questions. Yes, sir. It's established on 12-19 he's a drug user. Then on 2-19, I think the only reasonable reading is the company, the hospital, is on notice that he is still refusing to take a drug test for which they could, I think, reasonably take he's still using drugs. What happened after February 19th to the date that he was discharged that's your strongest evidence that he was no longer a drug user? Let's point to the email, for example, from Ms. Davis to Mr. Lyons where he said, I would like some assurance that you will consider my request for accommodations. In fact, her email back to him said, yes, submit the form and we will consider your request for accommodations and follow up with you then. Never at any point did Johns Hopkins hold out that we will not engage in this interactive process because- The evidence is there that he was not a current drug user. You just skipped over that and went to talking about reasonable accommodation. You can't skip over that. He has to be a qualified individual first. He cannot be if he is a current drug user and does not fall within any of the safe harbor provisions that would make him a qualified individual. Are there any of the safe harbor provisions that you can point to that would- Okay, which one of the three? B1, the first one where it says either somebody can have engaged in a drug rehabilitation program or the other one. Don't just engage in it. You have to have successfully completed a supervised drug rehabilitation program, which he didn't do. And even if he did and is no longer engaging in illegal use of drugs, which also not true, or has otherwise been rehabilitated successfully and is no longer engaging in such use. I just don't see that he ever stopped or successfully completed a drug program because he never admits, will never admit that he has a drug problem. He blames it on his bipolar disorder. He has a drug problem. Your Honor, I believe that's a disputed issue in this case, and we're on summary judgment here. So if it's disputed, if he, if it is disputed as to whether or not he has a drug problem, how could he have successfully completed a drug rehabilitation program? Your Honor, if you look further in Section 1 of the statute here, says we've completed a drug rehabilitation program or has otherwise been rehabilitated successfully and is no longer engaging in such use. Right. The facts viewed in the light most favorable to Mr. Lyons- On what evidence? But you have to have evidence in the record. He doesn't just get it because you read the statute. I'm asking you for the strongest evidence you have post-February 19 that from which the company could reasonably be put on notice that your client is no longer a current drug user. The strongest evidence is his submission of the short-term disability form signaling his intent to return to work and his consistent- Is this a letter from, is this a letter from Dr. Kwan? Well, that's the first one, Your Honor. But he also further requested a return to work. And if you look to his testimony when he said, I request the return to duty assessment, he knew that that would require a drug test and he knew- No, no, no. He can't say that. A current drug user could say that. I'm a drug user, but I want to come to work. And I know if I get, to go back to work, I have to be a non-drug user. That's not right. Let's go to that short-term disability letter. Do you think that letter says he is ready for work? No, Your Honor. It signals his intent to return to work. And he's not ready for work. It's not ready for work, right? Well, it signals that he may be ready to return to work. No, no, no. That letter itself expressly, do you think that letter itself, we're talking about the short-term disability letter. That's correct. April 15th date. Do you suggest that signals that he is ready to return to work at some point? No, Your Honor. Rather, it signals his intent to return to work. And again, the issue here is. So how does that letter help you put the company on notice that your client is no longer a drug user? What it does is. I mean, it may not even be relevant to that question, but I'm trying to find some evidence in the record from which the company would reasonably know that your client was no longer a current drug user. What the record reflects is they simply never requested that. He complied in good faith with every request the company made of him so that he could return to work with accommodations. And as a result, just a point on summary judgment where the record is to be read in the light most favorable to Mr. Lyons. Yeah, but it's not speculation. It has to be based on facts in the record. And, of course, he testifies that he did not use drugs over that period of time. And that testimony, at least on summary judgment, should be sufficient to create a dispute over that, which is all we're looking for. It simply does not. You're not right. Because a current drug user says, I no longer use drugs, you think that puts a company on notice reasonably that he's no longer a drug user? Well, when combined with the context, Your Honor, I believe it is a disputed fact. I'll move on to the retaliation. And the context is what? He wouldn't complete the drug treatment they sent him to? There's a dispute as to whether they ever required that of him. Rather, that's a clear credibility dispute. Listen, I didn't say required. You added that word. Didn't they send him to a drug rehab? They recommended certain programs that they recommend to everybody. Did he go to them? He started it but did not complete it. Did he refuse to complete it? He stops treatment there, yes, Your Honor. However, he continued treatment to address his bipolar disorder, which was what was underlying the issue here. And there's just a dispute on the record as to whether that was insufficient. What about the fact that he lied as part of his health screening after his conditional offer of employment? Isn't that lie alone sufficient to terminate employment? He denied that he'd ever used illegal drugs. I'm looking at it at JA-242, check the appropriate box, substance use, past five years, present or never. He checked never on everything except alcohol, and that, of course, is only occasional or social. What about couldn't they terminate him for that? Perhaps, Your Honor, but that's not the reason they've held out here. And, in fact, what we're dealing with is that as a matter of law, these reasons were not pretext. And that's what I'm trying to say is there's at least a dispute here as to the reasons they gave, which was his failure to purportedly engage in the required treatment program, whether that was pretext or not for just failing to accommodate him. And because there's a dispute as to whether they ever required that, I believe this should move forward to the jury rather than have been decided on summary judgment. I'll move quickly with my remaining time to the retaliation claims. The district court held that the two retaliation claims had not been exhausted. That was also error here in taking them quickly in turn. The first retaliation claim is that Johns Hopkins retaliated against him by terminating him in response to his protected activities request for accommodations. The district court simply got it wrong in reading that the charge does not describe facts giving rise to retaliation. If you look to the charge itself. But what are we to do with the fact that the retaliation box wasn't checked on the EEOC form? Your Honor, this court has said that the box, failure to check the box is not a reason, reason enough to say that a claim is not exhausted. Instead, this court looks to the charge liberally, particularly when not filled out with the help of an attorney, in order to preserve the rights here. If you look to the actual narrative of the charge itself, it says Mr. Lyons requested accommodations and instead of engaging with that request, they terminated him. Those facts form the heart of his retaliation claim and thus sufficiently, the claim has been exhausted by the charge itself. Again, moving to the second retaliation claim, which is based on Henry Berry's complaint to the Maryland court. They retaliated specifically for what actions? Just because he asked for an accommodation? Yes, generally for engaging in protected activity. But in light of the fact he was a drug user? Well, that's their purported reason as to why. Let me ask you. What if he were a drug user at the time? He were a drug user. They knew about it and they fired him, even though you had a request for accommodation. Does that make a claim for retaliation?  If my hypothetical. You don't have to agree with my hypothetical. But if he is a current user, a current drug user, they know he's a current drug user, and then he requests an accommodation and they go, you're a drug user, we're firing you. Is there a retaliation claim based on failure to accommodate request? Firing him because he's a drug user could be a legitimate reason to fire somebody. Is it legitimate? Yes, it can be. However, it could be, of course, I resist the hypothetical because I believe there are reasons here. His drug use, it was a pretext. And that allegation has been sufficiently made to create a dispute of fact as to its actual use. It's a pretext. Why? They knew he was a drug user. He was an admitted drug user. He was a continued, they have reason to believe he was a continued drug user. How is that a pretext for firing somebody because they're a drug user? I mean, you can look to the termination letter itself. It does not mention drug use.  You can read the contemporaneous emails leading up to the termination letter. They fired you a client for that. They say on the record you are a druggie. That's what you would want companies to do. To say you are a drug user and we don't want you. That's what you want the law to be. Well, in order to be shielded from this kind of claim, we need to state. So your advice is to a company, if you have a drug user and you aren't going to keep him on, not only dismiss him, but be sure you plaster the record with the fact he is a drug user. That's what you think the law should be? Not necessarily. Just in this case? Yes, Your Honor. The context here, again, demonstrates a dispute. Do you have any other questions? We have resources. Okay. Thank you very much. Mr. Fries, you're up. Glad to see you. May it please the Court, Your Honor, Jay Fries. That's right. It's like the small town in southwest Virginia. With Ford and Harrison representing the Johns Hopkins Hospital. Your Honor, it's not to be too flippant. This case reminds me of a song by Amy Winehouse. Why don't you just go right to your argument? We don't need to hear about some song you like. Fine, Your Honor. I'm sure it's a wonderful song. We'll go to the facts and the law as he argued them. I will, Your Honor. The issue in the case, as Your Honor had pointed out on questioning, is what did the hospital know at the time it made the decision? And what did they know? Well, they knew that, first of all, he had tested positive for cocaine on December 13th of 2012. They knew that on December 22nd in a conversation with Mr. Glixman where he was being interviewed. Mr. Glixman is an employee assistance professional at the hospital. He admitted that he had used cocaine while employed at the hospital two or three times a month and had used cocaine on and off for years. And these are in Mr. Glixman's progress notes, which are part of the record in the case. He also admitted that in his deposition that he had been convicted of possession of cocaine in Virginia back in 14 years prior. Do you need all that? Are you just saying that's to show that the failed drug test wasn't just an anomaly? It wasn't a one-off thing. Exactly, Your Honor. He had a past history of drug use. He tested positive. So you think that indicates to your client he is a current drug user, and especially no questions asked in light of his history. I think the history says he has a serious problem with cocaine and that it's not a one-off test. It's not a one-off thing where he tested positive. Can you just tell me for how long can the company presume he's a current drug user based on that positive drug test and the history? Like if it had been a year later and not four months later when they terminated him, would he still be a current drug user if there had been no positive tests in the interval? Your Honor, if he had gone through completed rehabilitation. He hasn't completed rehabilitation but also no positive drug tests. All you've got is a positive drug test in December plus the past history, and now it's the following December, and they want to fire him as a current drug user. Can they do that? I guess I was asking how long does this go? If they had waited six months or longer, that would be questionable on the part of the employer. Where did six months come from? That just seems like a reasonable. I'm looking at the cases. Unfortunately, there is a lack of. There's no black line that says, okay, up to here, you're a current user. After this period of time, you're not a current user. This Court has said that the individual has to be free from drug use for a period of weeks or months without defining what months are. Wouldn't it also matter about the particular facts of each case? It doesn't seem like we could really make a black line rule here because if the reason that there hadn't been a positive drug test for six months was because he refused to take a drug test, well, then that might indicate you're a current drug user. Then you have a reasonable suspicion that drug use was continuing. But here, is there any evidence of drug use between December 2012 and May 2013? He was not tested during that time, so we do not have any evidence. Was that because he refused? Because he refused. The program that he joined, the resource group program, included drug testing three times a week during the intensive IOP program that he was going to be put into, which he never joined. He would have been drug tested three times a week. But he says there were other reasons why he didn't join that program, right? And doesn't he say he never refused to be tested? I mean, I'm not trying to figure out what actually happened, but I'm trying to get at whether that's true. His reason is that they would not be treating his—well, he puts forth two reasons. One reason, he says that he was smarter than the counselor he was talking to. In fact, the IOP program, and this is in the progress notes at Joint Appendix 50, the IOP program is supervised by a physician trained in substance abuse counseling. So that deals with that issue. He says that the resource group would not manage his medications for his bipolar disorder, which is what Dr. Kwan did. So there was a period of time where he went to the resource group for substance abuse treatment, and Dr. Kwan managed his medications. We suggest that could have been—that was a perfectly workable solution if that's what he wanted. I get that you suggest that, but I'm just trying to get my hands—I understand your version of the facts. Right. And I understand his version of the facts. Right. And is it your contention that we don't have that? Well, that's my understanding of his argument. You know, listen, when a judge is talking, I know you have a lot to say, but it helps all of us to understand what your response is. Let the judge finish the question, and then you answer it. I apologize. Here's my question. Isn't that a dispute of fact? It just strikes me. Are we able to adopt your version sitting here now? I don't think so, Your Honor. The employer can set standards on what they want an employee to do. When they're on a leave of absence after a proven drug use, they can set standards on what the employee needs to accomplish in order to return to work. If the employee chooses to deviate from that and not follow through on that, I think the employer is entitled to terminate the individual. So Judge Harris' question was, isn't that a disputed fact? And so you say it's not a disputed fact? I would say that, I guess what I would say is it's an irrelevant fact. It's disputed but irrelevant as to why he chose not to stay with the resource group. The fact is he didn't stay with the resource group. And you are not relying then on the fact that he refused to take a drug test because that's disputed? No. I guess we're a little more subtle than that. What we're relying on is every time he would have been required to take a drug test, he avoided it. He dropped out of the resource group. And without drug testing, it's not a single test, but a series of tests, there is no assurance that he's not a current user of illegal drugs. Aren't you entitled to act on, isn't your client entitled to act on what your client knew about Mr. Lyons? Yes. Is that correct? That's correct. Well, what about, I'm going to ask you the question, what about, what were you told about Mr. Lyons refusing a drug test on February 19th? Now, Mr. Lyons said, I did not refuse a drug test. But is that relevant to what you knew if you were informed otherwise? Yes. Our only communication on this came from the resource group from the counselor, Mrs. Stiltz. And it's documented, contemporaneously documented in Joint Appendix 504. She reported that he had terminated treatment on February 7th. He attended only three out of five individual sessions. He refused to enter the IOP at all, which would have required drug testing. Initially promised to attend group therapy, but did not. And refused to be drug tested. That's what it says in the record. So, as far as we knew, he refused to be drug tested. So, aren't you entitled under the law to act on that fact? I believe we are, Your Honor. It's what we knew, and whether our belief that he was a current user of illegal drugs at the time of termination was reasonable. So, it strikes me that you knew with the history of drug use, he had failed a drug test, I may have the date a little wrong, somewhere around the 13th or the 19th of December. And then you were told that he refused to take one two months later, in February the 19th. And it seems to me, I don't know, aren't you entitled to continue a reasonable, the reasonable belief there is he is still a continued drug user? I believe so, Your Honor. And to further that line, on February 22nd, there was a conversation between Mr. Lyons and Mr. Glixman. First, on the 21st, Mr. Glixman calls Mr. Lyons and says, regardless of the type of treatment you've received in the past, you must receive a level of treatment that was recommended by the resource group, which was the IOP. So, Mr. Glixman leaves a voicemail message telling him he's got to get the same level of treatment as the IOP. Does he deny that he received that voicemail? He does. But then he calls back the next day. He calls Mr. Glixman the next day, on the 22nd. And he says, I'm entering treatment at the COMAC group, which was the second organization that was recommended by the hospital. Mr. Glixman, the hospital waits. He's still on a leave of absence all this time. Well, what are we to make of that for purposes of the decision we have to make? Well, I think you can – let me complete the thought. On March 11th, Mr. Glixman calls the COMAC group, and they say he's never entered the COMAC group. That seems to me to go to treatment, not whether or not he's a continued drug user. Don't you agree with me? You made an argument that you can set standards and he has to comply. Doesn't that go to that argument? It goes to that, but it also shows that he's – Wait, tell me how that shows continued drug use. Well, it's another indication that he's avoiding rehabilitation. He's saying he's going to do it, but he's not following through, which would be an indication, I think, that there is continuing drug use going on. Can I ask you a question about sort of what I took to be almost the thrust of the appellant's argument, at least before this court, putting to one side whether it was exhausted in front of the EEOC or raised in the district court, but that this current drug use exception, it only applies at all. Sort of the first question is whether the employer took an action based on the drug use itself. And their whole argument in this case is this wasn't based on the drug use. We think it was based on his bipolar disorder and the refusal to accommodate that. So none of this – we shouldn't even be talking about this exception, basically. It doesn't apply by terms. There's evidence in the record of the meeting of in-house, internal counsel for Johns Hopkins, HR at Johns Hopkins. Mr. Glixman, Ms. Henneberry had a conference call, and this was April 15th, which was the date of the expiration of his first leave of absence, wherein the decision was made that because he hadn't – Mr. Glixman said that he was noncompliant with the directives, with Mr. Glixman's directives. And as a result of that, the decision was made to terminate his employment. There's no other indication in the record that there was any other reason for terminating Mr. Lyons. On the contrary, what you have here is an employee. Can I just – this may not really matter, but I am confused about sort of the way this exception works generally. If your position is, look, no reasonable juror could find that they fired him for any reason but drug use, then that's it, right? Like you don't need – who cares if it was current or past or whatever? Like they didn't fire him because of the failure to accommodate, so case over. Do you know what I'm saying? You don't need an exception. The exception comes up when what the employer says is, we fired him for drug use, and then the plaintiff comes in and says, but I'm an addict. You can't fire me. I'm an addict. And then this exception comes into play, and that's a protected disability, and then the exception comes into play because the employer can say, well, we are allowed to fire you for this manifestation of your drug addiction disability. But you're saying this case isn't anything like that. In this case, they're saying he fired him. The plaintiff says, I was fired. They refused to accommodate. They discriminated against me because of my bipolar disorder. And you're saying no jury could find it was anything but the fact that he had used drugs. If no jury could find that it was anything but drug use, it had nothing to do with bipolar disorder, who cares if it was current drug use or not? Do you know what I'm saying? I understand, and we made that argument, I think, in the lower court that, you know, that the reason – I think the conflict comes because the ADA says that someone who's not using illegal drugs or has a past history of use of illegal drugs, let me put that, would be covered as a disabled employee under the Act. So that raises the issue, is this individual a person with a past history who's no longer using drugs? We know he didn't go through supervised rehabilitation. Or is he someone who actually has stopped using drugs and just has a past history of drug use? So I think that's where the issue comes up, if that answers your question. I'm just confused, but okay, thank you. I would also like to talk a little bit about Dr. Kwan. Throughout this case, and even in the reply brief, Mr. Lyons' counsel continues to say that he was getting treatment from Dr. Kwan, but Dr. Kwan admitted in his deposition that he was only managing Mr. Lyons' medications, not providing therapy for cocaine abuse. And, in fact, Dr. Kwan believed. Why does that matter if the company, when did the company know that? We knew that Dr. Kwan was managing his medications at the time that he was first referred to Mr. Lyons. Did you know that's what he, that's all he was doing? We knew that he was treating him for bipolar disorder. That's all we knew. And, in fact, that's all he was doing. My point is, though, but after the fact, when he says in deposition, I wasn't treating him for any of that, is it in the record that you knew that to be a fact until the deposition? So if that's true, it doesn't matter, does it? It doesn't matter. Dr. Kwan says he wasn't treating him. Then why are we talking about it if it doesn't matter? I guess it just bothers me, Your Honor. Okay. On the retaliation issue, again. But you take my point. I do take your point. I see what he said, but he really clarifies that in the record after he's dismissed for drug use. Right. After what's happened. Right. Okay. On the retaliation, I think our case is set forth in the brief pretty well. Not only did he not check the box, but when you read the charge, he says, I believe I was denied a reasonable accommodation and discharged due to disability in violation of the Americans with Disabilities Act. He contributes the discharge to his disability, not to retaliation. So it's clear also from the record that, in fact, the Equal Employment Opportunity Commission did not view the charge as raising issues of retaliation. Finally, on the Nehlin argument that was raised in Mr. Lyon's brief, the Nehlin case involved an employee of the Army who filed a paid discrimination charge, was still working for the Army, and suffered additional retaliation thereafter. This case is completely different. The retaliation that Mr. Lyon alleges occurred when Ms. Hennebery filed her complaint with the State of Maryland on March 19 of 2013. Mr. Lyon didn't file his charge of discrimination until May, the middle of May of 2013. Let me ask this. Did the hospital ever tell Mr. Lyon he was required to go to one of those treatment programs? Required? I couldn't find that in the record myself. The closest that I have to that is the message that was on February 21st that I had read earlier, where you must receive the level of treatment that was recommended by the resource group. At JA 505? Yes. Now, Mr. Glixman is not a manager of employees. He's someone who's trying to help this employee. He puts forward recommendations. We can't force someone to go to rehab, but we can use the fact that they don't go to rehab in making a decision whether to continue leave of absence or to reinstate him to the hospital. For the reasons argued here and for reasons set forth in my brief, I submit that the decision of the court below was well-reasoned and that it should be upheld by this panel. Thank you. Thank you, Mr. Fraze. Mr. Sassman, you have some time left. Thank you, Your Honors. I'm just going to try and make two brief points. First, picking up on Judge Harris's point, what Mr. Lyons' burdens show here is that a reasonable jury could conclude that Hopkins did not fire him on the basis of his drug use. And I wanted to point the court to certain places in the record where there's a clear dispute based on why Hopkins fired him or failed to accommodate his disabilities. First on JA 652 is the termination letter, which only says it failed to extend his leave, which is consistent with if you look at JA 473, an email from his supervisor, Paula Hannaberry, prior to any discussion about his noncompliance with treatment programs saying, I understood I could fire and intended to fire Mr. Lyons for failing to extend his leave on 225. That, moving forward, is further corroborated with other emails, including from Glixman, who says Hannaberry wants him fired for failing to extend his leave, not for failing to engage in certain treatment and not for drug use. This is also consistent with JA 657, which is Angela Davis' email to Hannaberry and other Hopkins employees. I guess that goes back to Judge Shedd's earlier point then. The employer needs to plaster this employee's record with the fact that he's engaging in illegal drug use and is a substance abuser. The statute requires, indeed, the employer to act on the basis. And, again, what I'm saying is there's a reasonable dispute. A reasonable jury could look at the record here. But you're not answering the question that I asked and now she's asking. Yes. I will say yes. The letter must say we fired you on the basis of your drug use or something like that in the context of the situation here. It would be hard to get hired in the future if that's the case. Well, that's why I'm trying to hedge and say certainly the context matters, too. But the context is what illustrates, further illustrates the dispute. What we're saying here, again, the statute requires and it would be beyond dispute they fired him on the basis. And it's what the letter doesn't say it as well do any of the emails leading up to it. Yes. My question about that is I would understand the argument if the letter had said something like we fired you because something entirely unrelated to the drug problem. But the failure to extend the leave, which was supposed to be for treatment, or I think it says or to have sought further leave as a reasonable accommodation. I mean, that all does, it all seems kind of tied up in the drug use problem. I mean, it doesn't say it right out loud, but it does bear on, it's connected to the drug use problem, right? In some ways, yes. I mean, he was on health leave to seek treatment. And, of course, there's a dispute, as I discussed before, whether that specific treatment was required or not. So I guess I'm just saying it doesn't seem, I know that we say kind of inconsistent and shifting rationales, but this doesn't seem really inconsistent. It just seems like a nicer way of saying, look, you haven't fixed your drug problem. Well, Your Honor, that's why I pointed to the Henneberry email prior to any of the discussion of the noncompliance. What she says in that email is that I understood, this is on February 25th, I understood I could terminate him for failing to extend his leave. This was prior to any knowledge that Clipsman saying he was noncompliant with his health or anything like that. Any drug user who's in any way coherent going to claim there's some other issue to protect themselves so they aren't fired for drug use? Potentially, Your Honor, but this goes to the core of what Judge Harris was saying, that the purpose of the succession. But initially, and that's what they said initially, then you look to see what the course of conduct was, and not what you think and not what we think looking back at it, but what we think of what the company knew looking back at it. Isn't that what we have to do? We have to determine whether a reasonable jury can come to this conclusion. But isn't that what we have to do? Anybody deciding this has to look at what the company knew, not what you now argue, not what we now look at the record. You heard me. I stopped Mr. Freeze. He was talking about what Dr. Quine said, and I said, but that may be true and that may be what you thought, but did you know that for a fact until he said it in deposition or after the lawsuit was filed? And he went, not really. I went, that's not really relevant. Respectfully, Your Honor, I'm pointing to emails within the company discussing their reasons for terminating Mr. Lyons, including the email from Angela Davis saying he's covered by the ADA, and if he requests accommodations, we need to determine whether we can accommodate him prior to terminating him. But you're saying they didn't fire him for drug use? They did not fire him for drug use? Your Honor, there's a dispute as to whether they fired him on the basis of his drug use. Then you claim they didn't fire him for drug use, right? That's correct, yes. The discrimination claim is based on the fact they fired him based on his disability or they failed to accommodate him as required by the statute. My last few minutes here, I'll move quickly again to the retaliation. So then what was the company to do or what are we to do with the clear drug use? What are we to do with that? Just say the company overlooked it? No, Your Honor. What do we do? What do we do with the clear drug use surrounding, underlying, wrapped into the request for accommodation? What are we to do with that fact that they knew? What do we do with that? Well, the test is whether the belief was reasonable. And that, we believe, is a context-based, case-by-case analysis. No, but I'm answering you. What do we do with it? In the real world, what do you do with it? Just go, since they didn't make it clear enough, they didn't say you are a drug user, we don't want drug users, that goes to the jury? Yes, Your Honor. It should move forward. It was inappropriate at summary judgment. I'm sorry, my time is up. No, no, no. Take a minute to finish up if you want to. Okay. That's the point I wanted to make. These elements of the current drug user exemption were inappropriate to resolve at summary judgment because there are basic factual disputes on these issues that should have allowed this to move forward, whether he was a qualified individual, which is often tried to a jury, whether that should have been resolved on summary judgment here was error. All right. Thank you, Your Honor. Thank you very much. Just let me ask, just to clarify for me, Mr. Sassman, are you an attorney or a student? It's just not clear to me. I'm an attorney, Your Honor. Okay, good. I thought you were, but I didn't know. We're going to step down to commend you and thank you, but if you were a student, I wanted to do it here in the courtroom in front of everybody else. Thank you, Your Honor. And we all decided, you seem like a lawyer, but we just weren't sure. We just weren't sure. But you work with the Georgetown Law Immersion Clinic, right? That's correct, yes. We have some students from the clinic this semester in the gallery. We'll step down to Greek Council and go directly to the next case.
judges: Dennis W. Shedd, Stephanie D. Thacker, Pamela A. Harris